E-FILED
Monday, 25 March, 2019 02:34:04 PM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| NATHAN R.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Defendant. | Case No. 4:17-cv-04298-JEH |

**Order and Opinion**

Now before the Court is the Plaintiff Nathan R.'s Motion for Summary Judgment (Doc. 11) and the Commissioner's Motion for Summary Affirmance (Doc. 13).[1] For the reasons stated herein, the Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS the Commissioner's Motion for Summary Affirmance.[2]

**I**

On September 6, 2011, Nathan R. filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) alleging a disability onset date of June 24, 2011. His claims were denied at the initial and reconsideration stages. He requested a hearing before an ALJ, and on July 16, 2013, the Honorable Susan F. Zapf (ALJ) held a hearing at which Nathan was not present. The ALJ obtained Vocational Expert (VE) testimony at that time. The hearing was rescheduled and held November 12, 2013. Nathan was represented by counsel and a VE testified again. The ALJ issued an unfavorable decision on February 27, 2014. The Appeals Council (AC) remanded

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 8, 10).
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 6) on the docket.

1

the matter because the ALJ failed to properly consider the medical opinions provided by William Lopez, M.D. and Gary Cromer, M.D., failed to properly consider Nathan's residual functional capacity, and failed to perform an adequate evaluation of Nathan's mental impairments using the special technique described in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). A third hearing was held on April 5, 2016 before the ALJ and she issued another Decision[3] on June 16, 2016 again denying Nathan's claims.[4]

## II

At the hearing on November 12, 2013, Nathan testified that he was 48 years old and lived next to a Salvation Army (he was homeless). Before that, he lived temporarily with his sister in Rockford, Illinois. He testified he felt he could not work at time of the hearing because the more he did, the more it wore out his body:

> Over exerting my body, makes me feel so – I can't think of the right word, but – but like I send [sic] I did been on life support a few times in my life and I kind of know what that feels like and that's the way it makes me feel.

AR 177. He testified that his kidney condition was a three out of 10 in terms of pain at that moment. He said his pain level was a 3 out of 10 as he sat there and he "kn[ew] it's my kidney." AR 183. Nathan had kidney pain on a day to day basis and "sometimes . . . it goes up to about a five or a six." AR 187. Nothing other than soda made his kidney pain worse and water and acetaminophen made the pain go away. Nathan stated he was last in the emergency room because of his breathing impairment about 30 days before the hearing. Nathan testified he used a nebulizer every day, and he used two different inhalers. He took acetaminophen for the pain in his back. When asked where the pain in his back was located, Nathan answered, "Well, I know my

---

[3] This is the Decision at issue in the current appeal.
[4] Nathan was found disabled in 2004 because his impairments met Listing 3.03 (asthma), but the Commissioner later determined his disability ceased on February 1, 2010. Nathan did not ultimately seek further review of that decision in federal court. *See* Dft's MSA (Doc. 14 at pg. 1 n.1).

kidney hurts. I got my back it's like this, it's in my back." AR 183. He then affirmed the pain was in the center of his back. He further answered the level of pain in his back depended upon what he was doing. He said, "[L]ike right now, it's just not bothering me sitting here." *Id*. When asked if he hurt his shoulder lifting weights, Nathan answered that he believed he hurt it July 12, 2012 when he tried to do pushups. He said his shoulder had been bothering him for "almost over a year." AR 184. He said it was hurting him as he sat at the hearing. He testified it was painful to reach over his head with his right hand.

At that point, the ALJ stated:

> Okay. You know, I think you're right, Counsel. I think we would probably would [sic] – it be [sic] a benefit to get a CE on the physical. Because I don't have a good way from the notes just to get an idea what his problems are with the back and the shoulder . . . .

AR 188. Shortly thereafter the ALJ continued the hearing.

At the April 5, 2016 hearing, Nathan was 49 years old and living with his sister who helped him out. He was again asked why he felt he could not work at that time. Nathan answered, "I mean, I work, I get sick and (INAUDIBLE). I mean, this body ain't like it used to be." AR 137. When he became sick, he experienced asthma flare ups and "[he] got a disc in [his] back that ain't good. This right, left arm now hurts." *Id*.

Nathan testified he had been seeing a pulmonologist for the last four months. His need to use both of his inhalers and his nebulizer varied such that there were times he could use all three and still have to visit the emergency room. He last visited the emergency room in December 2015. He used his inhaler every day, used his rescue inhaler once a week, and used his nebulizer once a month. He "didn't think" he had side effects from his medications. AR 141. He did not use any street drugs or alcohol and, specifically, he thought he had "been clean now going on four years." AR 142.

When asked how far he could walk without stopping, Nathan answered "about a half a block, block." AR 144. After that, he felt a sharp pain in his left kidney. He did not like to sit too long because "the pain goes in my kidney[.]" AR 146. Just sitting at the hearing caused Nathan to have left arm pain. He had a pin in his left elbow ever since a car accident in the 1990s, and he believed that arm hurt most in the winter. He testified he had arthritis in his right shoulder so "I don't activate it to make it hurt." *Id*. He was able to take care of all of his self-care including showering and dressing. When pressed whether his arm pain posed problems in doing those things, Nathan answered, "I take my time." AR 147.

Upon questioning by his attorney, Nathan testified that medical providers had not changed any of his prescriptions due to his kidney problems. He experienced "[f]lares of heartburn" from his medications and was therefore taking medicine for it as well. AR 152. The ALJ elicited testimony from Nathan that at the time he was working, he used his nebulizer on a daily basis and he had to go to the emergency room "twice, three times, one, one, two. Two or three times I can recall." *Id*. He also had to use his rescue inhaler "one day three times in one night" while he was working. *Id*. Nathan provided that his recent emergency room visit in December 2015 was due to kidney pain which he was currently having and had "on a daily basis sometimes." AR 153. The ALJ then asked Nathan his current kidney pain level and Nathan responded it was at a four out of 10, and that was generally his kidney pain level. The pain was always on his left side.

The ALJ and Nathan's attorney lastly questioned the VE.

### III

In her June 16, 2016 Decision, the ALJ determined Nathan had the following severe impairments: asthma; chronic kidney disease (CKD); lumbago; and alcohol abuse. AR 24. She made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except only occasional kneeling, crouching,

4

crawling, balancing, and stooping, and climbing of ramps and stairs. He cannot climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to fumes, odors, dusts, gases, poorly ventilated areas, or temperature extremes. He is limited to simple, routine, and repetitive tasks learned in 30 days or less.

AR 26. In support of her RFC finding, the ALJ considered that Nathan was 49 years old with an 11th grade education and no past relevant work experience. She noted Nathan alleged that low back pain and shortness of breath limited his activities, and he said chronic low back pain, stage II kidney disease, and shortness of breath prevented him from working. She listed his then-current prescription and non-prescription medications.

The ALJ discussed medical evidence of record dated between June 2, 2011 and April 13, 2016. At various points throughout that time period, Nathan was treated for his asthma, elevated creatine, CKD, breathing problems, coughing, abdominal discomfort, back pain, shortness of breath, asthma attacks not responsive to his inhalers, chronic obstructive pulmonary disease, lower back pain with right radicular symptoms, left flank pain, and upper back pain. The ALJ detailed the results of cardio-pulmonary and physical examinations during that time period which revealed: clear lungs; regular heart tones; extremities negative for clubbing, cyanosis, or edema; clear lungs in all fields with "maybe a faint murmur as well as one or two irregular beats in a one minute period;" extremities negative for edema; a few rhonchi, but no crackles or areas of consolidation noted and heart tones were distant but regular; lower extremities with good reflexes and pedal pulses; generally good range of motion in the arms, neck, back, and shoulders; lungs clear to auscultation and a regular heart rate and rhythm with no murmurs, gallops, or rubs; musculoskeletal exam within normal limits; and musculoskeletal examination positive for back pain but no costovertebral angle tenderness. AR 27-31.

The ALJ also detailed the various diagnoses made and the medications prescribed at Nathan's medical appointments throughout the relevant time period.

Those diagnoses included among other things asthma, COPD, mineral bone disease, stage II CKD, Vitamin D deficiency, history of running out of medication, recurrent abdominal pain improved with diet, gastro-esophageal reflux disease, and low back pain. A CT scan in June 2012 revealed no evidence of nephrolithiasis and no definite CT explanation for Nathan's flank pain. A January 2014 CT scan of Nathan's lumbar spine revealed mild degenerative disc disease and a concurrent x-ray of his right shoulder was negative for fracture or dislocation. A March 2014 x-ray of his chest was negative, a November 2015 CT scan of his abdomen and pelvis included mild findings, and an April 2016 x-ray of his chest was negative for any acute lung infiltrates.

The ALJ detailed at length consultative examiner Dr. Lopez's observation of and examination of Nathan on December 12, 2013. Nathan alleged disability due to asthma. At that time, Nathan's lungs were clear to auscultation and percussion without rales, rhonchi, or wheezes, and he had a regular heart rate and rhythm with normal S1 and S2 heart sounds and no rubs, clicks, or murmurs. Dr. Lopez diagnosed asthma, COPD, tobacco abuse, and hypertension. The ALJ next detailed Dr. Lopez's December 12, 2013 Medical Source Statement of Ability to do Work-Related Activities (Physical). The ALJ determined Dr. Lopez's opinions were not entitled to "substantial weight." AR 31. State Agency Dr. Cromer's opinions were next rejected. The State Agency physicians' opinions were considered and the ALJ determined that the record supported their findings that Nathan's condition did not meet or equal a Listing. The ALJ also expounded upon why Nathan's suggestion that he was unable to sustain any full-time work activities was not consistent with the record and why she did not fully accept his allegations.

IV

Nathan argues the ALJ erred in the following ways: the ALJ failed to comply with the AC's remand order; the ALJ failed to properly assess the opinions of Dr.

6

Lopez and Dr. Cromer; and the ALJ erred when assessing Nathan's RFC and subjective complaints.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. §§ 404.1566 and 416.966.[5] The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any

---

[5] The standards for establishing a disability in order to receive DIB and SSI are materially the same. *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

7

substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Nathan claims error on the ALJ's part at Step Four.

## A

As for Nathan's first argument that the ALJ failed to follow the AC's remand order such that this case should be reversed or remanded, his argument fails. In *Poyck v. Astrue*, the Seventh Circuit Court of Appeals stated:

8

> The question whether the ALJ complied with the Appeals Council's remand order is not, in the final analysis, of independent importance. The only question properly before us is whether the ALJ's decision (which the Appeals Council chose to leave undisturbed) is supported by substantial evidence. *See Skinner v. Astrue*, 478 F.3d 836, 841, 844–45 (7th Cir.2007); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir.2002).

414 F. App'x 859, 861 (7th Cir. 2011) (unpublished opinion); *see also Kastman v. Barnhart*, No. 01 C 0150, 2002 WL 1461499, at *9 (N.D. Ill. July 3, 2002) (passing on the claimant's argument that the Commissioner's decision should be reversed because the ALJ violated the AC's remand order where it was, first, doubtful "whether the type of agency action taken by [the ALJ and AC in that case], framed by [the claimant] as a violation of 20 C.F.R. § 404.977(b) and 20 C.F.R. § 416.1477(b), should be reviewed by the court as a final decision subject to judicial review," and second the court would address all of the claimant's criticisms in its review of the ALJ's decision). The Commissioner argues as much, contending Nathan's arguments for reversal are subsumed by the substantial evidence review, the AC who issued the remand order did not find that their order was not followed which indicated the ALJ did, in fact follow it, and the ALJ's Decision is otherwise legally sound and supported by substantial evidence and should therefore be affirmed. Accordingly, the Court will proceed to address Nathan's arguments pertaining to the ALJ's June 2016 Decision.

### B

Nathan next argues that in evaluating Dr. Lopez and Dr. Cromer's opinions, the ALJ made multiple errors of law and fact requiring reversal or remand. Specifically, Nathan argues the ALJ failed to evaluate their opinions pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and failed to properly explain her rationale. 20 C.F.R. § 404.1527(c) provides[6]:

---

[6] As the Commissioner points out in her brief, the SSA recently revised its rules for evaluating medical evidence and medical opinions but those changes do not apply to this case because Nathan's application was filed before the effective date of March 27, 2017.

9

> How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

The listed factors include: 1) examining relationship; 2) treatment relationship, which in turn includes length of the treatment relationship and the frequency of examination, and the nature and extent of the treatment relationship; 3) supportability; 4) consistency; 5) specialization; and 6) other factors brought to the Social Security Administration's attention. *Id*.

**1**

With regard to Dr. Lopez's opinion, Nathan first takes issue with the ALJ's dismissal in her Decision of that opinion because Dr. Lopez "fail[ed] to build an adequate evidentiary bridge, which links his opinions to reliable medical evidence." AR 31. Nathan correctly points out that it is *an ALJ's obligation* to build an accurate and logical bridge between the evidence and her conclusion. *See Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (an ALJ must "build an accurate and logical bridge from the evidence to the conclusion"). While it is unfortunate that the ALJ used such language to reject Dr. Lopez's opinion, for the reasons set forth below, the ALJ did not err in evaluating his opinion and her rationale was sufficiently articulated.

Nathan argues Dr. Lopez explained the restrictions to which he opined but the ALJ ignored those notes in support of the opined-to restrictions, and medical records were not inconsistent with Dr. Lopez's medical opinion. He also argues the ALJ failed to explain why she did not have enough information regarding Nathan's back and shoulder before Dr. Lopez's opinion but after the doctor's evaluation she had enough information despite the fact that Dr. Lopez was not directed to provide any information about those problems and was not provided appropriate records. The Commissioner counters that the ALJ's RFC finding was largely consistent with Dr. Lopez's opinion, the ALJ reasonably found that Dr. Lopez's specific opinions were

not well-supported, and the ALJ reasonably rejected Dr. Lopez's opinion for being based upon Nathan's self-described limitations instead of on the objective evidence.

In her Decision, the ALJ detailed Dr. Lopez's December 2013 comprehensive internal medicine consultative examination. At that time, Nathan alleged disability due to asthma, and he stated he had been on treatment for it and emphysema since 2000, had a history of multiple emergency room treatments for asthma, used his rescue inhalers two times a day and his nebulizer treatments about once a month, and acknowledged a history of medication non-compliance. During that examination, Nathan complained of intermittent coughing and wheezing, but he denied dizziness, lightheadedness, syncope, chest pains, orthopnea, paroxysmal nocturnal dyspnea, or edema. On cardio-pulmonary examination, Nathan's lungs were clear to auscultation and percussion without rales, rhonchi, or wheezes, he had a regular heart rate and rhythm with normal S1 and S2 sounds and no rubs, clicks, or murmurs. Dr. Lopez observed Nathan had} no difficulty using his hands and fingers, he exhibited good grip strength, he had 5/5 motor strength in the upper and lower extremities, and his range of motion in the shoulders, elbows, wrists, hips, knees, and ankles was not limited. The range of motion in his cervical and lumbar spine was not limited and straight leg raise testing was negative bilaterally both seated and supine. Nathan stated he had intermittent shortness of breath and dyspnea on exertion and he could walk for two blocks before he had to stop because of shortness of breath. He noted good relief of dyspnea with the use of his inhalers. The ALJ then set forth the details of Dr. Lopez's December 2013 Medical Source Statement of Ability to do Work-Related Activities (Physical). He limited Nathan to light lifting and carrying, sitting, and standing for three hours out of an eight-hour work day and walking two hours during that work day with only occasional reaching in all directions, overhead reaching, and pushing/pulling bilaterally. He also reported heat and extreme temperatures could aggravate Nathan's dyspnea and thus limited him to only

occasional exposure to dusts, odors, fumes, and pulmonary irritants, extreme cold, and extreme heat.

The ALJ explained Dr. Lopez's opinions were not entitled to "substantial weight" because he did not link his opinions to reliable medical evidence; for example, his own clinical findings did not support his opinions as to Nathan's capabilities. AR 31. The ALJ then compared Dr. Lopez's opinions to his cardio-pulmonary examination findings, his range of motion findings, and Nathan's 5/5 motor strength in his lower and upper extremities. The ALJ continued:

> [O]ther medical records also fail to provide support for Dr. Lopez's contentions, as summarized above. Thus, he appeared to be relying largely on the subjective complaints of the claimant. The claimant's subjective complaints are not well supported by his actual functioning. Dr. Lopez's assessment is thus given minimal weight; the full record does not support functional restrictions beyond those reflected in the adopted [RFC].

AR 31-32. It is obvious the ALJ properly considered the factors under § 404.1527, specifically, the supportability and consistency of Dr. Lopez's opinions. Given that the ALJ identified both Dr. Lopez's comprehensive internal medicine consultative examination and his Medical Source Statement, the ALJ was clearly aware that Dr. Lopez actually examined Nathan whereas the State Agency doctors did not. Many of the medical records to which Nathan cites in support of his contention that the ALJ ignored medical records which were not inconsistent with Dr. Lopez's opinions pre-dated Nathan's alleged onset date of June 24, 2011. Other medical records to which Nathan cites were cited by the ALJ in her Decision. Contrary to Nathan's assertion, it does not appear to the Court that the ALJ "ignored" Dr. Lopez's notes (Nathan's statements) in support of the restrictions to which he opined where the ALJ stated clearly Nathan's subjective complaints were not well supported by his actual functioning. Lastly, Nathan's argument regarding his back and shoulder impairments is inappropriate in the context of Dr. Lopez's opinions. It does not

appear from Dr. Lopez's December 2013 examination or Medical Source Statement that Nathan complained to Dr. Lopez about either his shoulders or back. It is unclear to the Court why Nathan believes it was incumbent upon the ALJ to ensure the consultative examiner elicited those particular complaints from him, even given an ALJ's duty to fully develop the record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1512(a) (providing that a claimant must inform SSA about or submit all evidence known to the claimant that relates to whether or not the claimant is disabled, that such a duty is ongoing, and that such a duty applies at each level of the administrative review process); *and* 20 C.F.R. § 404.1512(b)(1)(iii) (providing that "evidence" under § 404.1512(a) includes "statements [a claimant] make[s] to medical sources during the course of examination or treatment, or to [SSA] during interviews, on applications, in letters, and in testimony in [SSA's] administrative proceedings"). The ALJ made no reversible error with regard to his consideration of Dr. Lopez's opinions.

**2**

Nathan next argues the ALJ rejected Dr. Cromer's opinion with insufficient rationale because it did not adequately address why the RFC differed from that opinion. He also argues the ALJ contradicted herself in the Decision by accepting State Agency opinions (of which Dr. Cromer's was one) generally and simultaneously dismissing his opinion. The Commissioner points out that the ALJ's RFC finding was virtually identical to the State Agency physicians' assessments and the minor variations in the ALJ's RFC finding were more restrictive. The Commissioner acknowledges that at one point in her Decision the ALJ indicated Dr. Cromer's opinion was being rejected and at another point indicated that it was being accepted though, ultimately, the ALJ included all of Dr. Cromer's limitations in the RFC. The Commissioner argues nevertheless, Nathan has not shown reversible error where, had the ALJ consistently indicated she was giving full weight to Dr. Cromer's opinion, Nathan still would have been able to do the jobs identified by the VE.

13

After she provided the details of Dr. Lopez's consultative examination and Medical Source Statement (as set forth above) and gave his assessment "minimal weight," the ALJ concluded with regard to Dr. Cromer's opinions: "For similar reasons, the opinions of Dr. Cromer . . . are rejected as he did not the [sic] benefit of the claimant' [sic] hearing testimony or the ability to review later acquired medical evidence." AR 32. Then later in her Decision, the ALJ explained she considered the State Agency physicians' opinions (of which Dr. Cromer's was one) that Nathan's condition did not meet or equal a listing and determined those opinions were supported by the record. Furthermore:

> With respect to the assessment of the claimant's physical impairments, the state agency medical consultants [sic] findings are accepted as well supported by the objective medical record showing little in the way of clinical signs and findings, and reflecting general control of his severe impairments with appropriate treatment.

AR 33.

The ALJ's explanation with regard to the weight she gave Dr. Cromer's opinion certainly lacked the clarity the Court would expect. However, such an error in this case was harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). As the Commissioner notes, the ALJ's RFC finding included the restrictions to which Dr. Cromer opined and was even *more restrictive* than his opinion. It follows that had the ALJ's Decision included only that the State Agency physicians' opinions were accepted, the ALJ's RFC finding would have been the same and thus the jobs the VE identified as ones Nathan could do would still remain.

Nathan dovetails his argument that the ALJ erroneously considered Dr. Cromer's opinions with his argument that the basis for rejecting Dr. Cromer's opinions equally applied to the State Agency physicians' opinions for which the ALJ gave no reason why the latter's should be given more weight than Dr. Cromer's.

Nathan is incorrect that the ALJ gave no reason other than their opinions supported her RFC. The ALJ explicitly reasoned that the State Agency medical consultants' findings regarding Nathan's physical impairments were accepted because "well supported by the objective medical record showing little in the way of clinical signs and findings, and reflecting general control of his severe impairments with appropriate treatment." AR 33. Also, the Court remains mindful that it should read an ALJ's decision as a whole and with common sense. *Rice v. Barnhart*, 384 F.3d 363, 369, 370 n.5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole . . . ."); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (explaining that an ALJ's opinion is given a commonsensical reading during an analysis of the opinion for fatal gaps or contradictions); *and Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) ("we give the opinion a commonsensical reading rather than nitpicking at it"). In light of all the record evidence the ALJ considered and her articulation of her conclusions, the Court finds the ALJ's contradictory treatment of Dr. Cromer's opinions does not warrant remand.

## C

As for Nathan's last argument that the ALJ erred when assessing his RFC and subjective complaints, Nathan contends the ALJ cherry picked and misconstrued evidence in this case. He says the ALJ failed to consider his back and shoulder pain, multiple hospitalizations and emergency room visits for breathing problems, and complications from CDK that were clearly articulated in the record and supported by objective medical evidence. Finally, Nathan argues the ALJ failed to consider both medical and non-medical evidence and failed to consider the aggregate effects of his impairments when assessing the RFC. The Commissioner argues that the ALJ applied the correct legal standard in evaluating Nathan's symptoms where she first determined he had medically determinable impairments and then proceeded to evaluate their severity in accordance with SSR 16-3p and Seventh Circuit case law

applying those provisions. The Commissioner also argues that while Nathan points to some evidence in the record that supports his claims, that is not enough.

A claimant's RFC "is the most he can still do despite his limitations." 20 C.F.R. § 404.1545(a)(1). An RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p; *see also Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("In assessing the claimant's RFC, the ALJ must consider both the medical and nonmedical evidence in the record"). With regard to subjective symptom evaluation, SSR 16-3p directs the ALJ to focus on the "intensity and persistence of the applicant's symptoms." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016), *citing* SSR 16-3p. SSR 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms and also the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional imitations and restrictions due to pain and other symptoms. SSR 16-3p, at *7-8. SSR 16-3p reminds those considering it that, "Subjective symptom evaluation is not an examination of an individual's character." *Id*. at *2.

After her discussion of the medical evidence, including Nathan's subjective complaints and reports to medical providers, in the record dated between June 2011 and April 13, 2016, the ALJ concluded:

> While diagnostic testing does reveal some significant findings, also noted above, these must correlate with clinical examination. In the present case, despite his subjective complaints, the claimant's clinical presentation is largely within normal limits or only mild deficits are noted. Furthermore, the claimant does not exhibit complications from

> kidney disease that would be expected to be disabling. There is no evidence of clinical findings that suggest his condition is further decompensating.

AR 32. The ALJ also explained that she did not fully accept Nathan's allegations due to inconsistencies regarding his resultant limitations and his actual functioning. The ALJ then cited to instances in the record to support that statement.

Though Nathan highlights that the ALJ cited to only four pages of records in a record containing over 1,300 pages of medical records to support her conclusion that his subjective statements were inconsistent with the record, he disingenuously makes such an argument. Again, the Court must consider the ALJ's Decision as a whole, and she cited to considerably more than four pages of records throughout her Decision. Included in her discussion of the evidence were references to Nathan's hearing testimony, objective medical records, Nathan's reports to medical providers, imaging results, medications prescribed, Nathan's daily activities, and the like. In other words, within her Decision the ALJ built a logical bridge between the evidence and her conclusions regarding Nathan's subjective symptoms. *Berger*, 516 F.3d at 544.

Also, it is well settled that an ALJ need not discuss every piece of evidence. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Of course, a failure to discuss every piece of evidence does not equate to cherry-picking without more. *See Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Denton*, 596 F.3d at 424 ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding"). The examples of evidence the ALJ allegedly failed to consider, per Nathan, include records dated in 2001, 2002, and 2003. The Commissioner notes that fact and further notes some of those records are dated from a period when the Commissioner agreed Nathan was disabled. The Commissioner also correctly notes that the issue currently before this Court is not whether Nathan was disabled in years past, or even whether the Commissioner properly determined when that period of disability

ended. Instead, the relevant period spans from the alleged onset date of June 24, 2011 through the date of the ALJ's Decision (June 16, 2016). The *Court* notes that the ALJ did cite to some of the records to which Nathan cites in support of his arguments. The Court does not find that the ALJ impermissibly cherry-picked the evidence.

Nathan maintains that the ALJ committed reversible error in her consideration of his back and shoulder pain. Once again, the Court can trace the path of the ALJ's reasoning in choosing to omit from her RFC finding any additional restrictions due to that alleged pain. At Step Two, the ALJ stated:

> The claimant's longitudinal medical record indicates that he injured his right shoulder after lifting weights and was seen by a chiropractor [citing evidence to which Nathan Cites in his Motion for Summary Judgment]. However, there is no indication of a fracture, tendon tear, rotator cuff tear or evidence that his condition will continue to be problematic for more than a year. Therefore, the undersigned finds the claimant's right shoulder injury to be non-severe.

AR 24. At Step Three, the ALJ considered whether Nathan's lumbago met or medically equaled a listing. She concluded it did not as he "ha[d] not demonstrated the requisite physical findings and he is able to ambulate effectively and use his hands for both fine and gross manipulations." *Id*. Later in her Decision, the ALJ acknowledged that Nathan testified to chronic low back pain, that he was diagnosed with stage II CKD, that he complained of left flank pain, and that he complained of lower and upper back pain. The ALJ also acknowledged, however, that Nathan's physical examinations were often negative, his musculoskeletal examinations often revealed normal findings (one in November 2013 was positive for back pain), a January 2014 CT scan of Nathan's lumbar spine revealed mild degenerative disc disease with retrolisthesis of L4 and L5 on S1, and a January 2014 x-ray of Nathan's right shoulder showed mild acromioclavicular (AC) joint osteoarthritis (but negative for fracture or dislocation). The ALJ included that Dr. Lopez's examination revealed no limitation in Nathan's shoulder range of motion, his cervical and lumbar spine

range of motion was not limited, and he had full motor strength in his upper and lower extremities.

The ALJ made no legal errors in her assessment of Nathan's subjective complaints or in her assessment of his RFC. Nathan's citation to other record evidence essentially invites the Court to reweigh the evidence and consider the facts anew. The Court cannot do so. *See Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) ("Although we review the entire record, we may not decide the facts anew, reweigh the evidence, or substitute our own judgment for that of the Secretary"). The Court finds the ALJ's Decision is supported by substantial evidence.

## V

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 11) is DENIED and the Defendant's Motion for Summary Affirmance (Doc. 13) is GRANTED. The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Nathan R., is AFFIRMED."

This matter is now terminated.

*It is so ordered.*

Entered on March 25, 2019.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE